UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------
In re

    SHEEHAN MEMORIAL HOSPITAL,                  04-11548 B

                                Debtor            **DECISION & ORDER**

------------------------------------------------

                  Lacy Katzen LLP
                  David D. MacKnight, Esq., of Counsel
                  The Granite Building
                  130 East Main Street
                  Rochester, New York 14604-1686
                  Attorneys for the Debtor

                  The Knoer Group, PLLC
                  Richard E. Stanton, Esq., of Counsel
                  1707 Liberty Building
                  Buffalo, New York 14202
                  Attorneys for Young Hee Tato

Bucki, U.S.B.J.

    This decision addresses two issues in a multi-dimensional claim dispute: whether to allow an administrative claim for damages resulting from a post-petition termination of employment; and whether this court should abstain from deciding a claim for damages resulting from allegedly discriminatory employment practices.

    On February 10, 2004, Young Hee Tato and Sheehan Memorial Hospital entered into a contract for the employment of Ms. Tato as a Physician's Assistant. Pursuant to their agreement, Tato would work at the hospital "for a period of twenty-four months unless terminated" pursuant to the terms of the contract. Less than one month after the execution of the agreement, however, Sheehan Memorial Hospital filed a petition for relief under chapter 11 of the Bankruptcy Code. For more than a year after the bankruptcy filing, Ms. Tato continued to work at the hospital. Then on March 28, 2005, without prior notice to

Tato, the hospital terminated her employment. In response, Ms. Tato filed a proof of claim for the sum of $40,933.04.

Sheehan Memorial Hospital operated as a debtor in possession for more than two years after the filing of its bankruptcy petition, until confirmation of a Plan of Reorganization on November 22, 2006. Pursuant to Article 8 of this Plan, the debtor rejected all executory contracts that were not specifically assumed. Further, the Plan contemplated that the debtor would promptly object to any disputed claims, so that the debtor could effect the proposed distribution to creditors. To this end, Sheehan Memorial Hospital raised multiple objections to the claim of Young Hee Tato. This matter was then scheduled for a hearing, at which the respective counsel for Sheehan and for Ms. Tato appeared. Based on testimony and other evidence presented, the court rendered an oral decision with respect to all but two of the debtor's specific objections. As to these open issues, the court has now received supplemental briefs from each of the parties.

Damages for Termination without Notice

The first open issue involves Tato's claim for damages arising from the termination of her employment without notice. The employment contract states that the agreement "may be terminated by [Ms. Tato] after 24 months, upon 60 days written notice, or by Sheehan Memorial, at any time, with or without cause, upon the same 60 days written notice." In the present instance, Ms. Tato asserts that because she received no prior notice of termination, she enjoys an administrative claim for wages that would have been paid during the notice period. Based on her annual salary of $47,000, these wages would have totaled $7,726.03. The debtor responds that the claim should be denied, because Tato has already received the maximum distribution for wages as allowed by 11 U.S.C. §502(b)(7).

Section 502(b)(7) states that the court shall allow "the claim of an employee for damages resulting from the termination of an employment contract," except to the extent that "such claim exceeds – (A) the compensation provided by such contract, without

acceleration, for one year following the earlier of – (i) the date of the filing of the petition; or (ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus (B) any unpaid compensation due under the contract, without acceleration, on the earlier of such dates." The debtor contends that the date of bankruptcy filing represents the earlier of the referenced dates; that the debtor has already paid any salary earned both for the year following the bankruptcy filing and as of the date of bankruptcy filing; and that Ms. Tato has therefore received the limits of her allowed claim. The error of this argument lies in the fact that the debtor would add a further substantive dimension to a statute that merely imposes a cap on liability.

With respect to damages resulting from a termination of employment, section 502(b)(7) limits the allowed claim to an amount that cannot exceed the sum calculated by reference to a statutory formula. The statute, however, does not define the time during which the underlying claim may accrue. *Anthony v. Interform Corp.*, 96 F.3d 692 (3rd Cir. 1996); *In re Johnson*, 117 B.R. 461, 465 (Bankr. D. Minn. 1990). To the extent that Ms. Tato holds a right to recover what section 502(b)(7) describes as "damages resulting from the termination of an employment contract," she will be allowed a claim without regard to the time of its accrual, but in an amount no greater than the sum of any compensation due on the date of bankruptcy filing, plus the amount of compensation that she would have received under her contract for one year after the filing date.

Section 502(b)(7) serves only to limit allowances for damages resulting from termination, and not the recovery of salary for services actually rendered. In the present instance, the debtor terminated Ms. Tato's employment on March 28, 2005, a date more than a year after the bankruptcy filing. For the period prior to termination, by reason of the payment of salary, the debtor satisfied any claim of compensation for actual services. Accordingly, the only damages resulting from termination were the wages that Ms. Tato would have received after the required 60 day notice. Because these damages do not

exceed the contractual rate of annual compensation, section 502(b)(7) imposes no limitation on the allowance of this component of her claim.

Section 502(b)(7) speaks only to the amount of an allowed claim, and does not address Tato's further request for administrative priority. Such status does not necessarily arise whenever a claim matures post-petition. Rather, 11 U.S.C. §503(b)(1)(A) establishes the controlling standard, namely that an administrative expense includes "the actual, necessary costs and expenses of preserving the estate, including – (i) wages, salaries and commissions for services rendered after the commencement of the case." *Collier on Bankruptcy* accurately summarizes the applicable rule:

> The principle that an administrative expense can arise only from a transaction with the trustee (or debtor in possession) of the estate is derived from the reference in section 503(b)(1)(A) to the "estate." The earliest a bankruptcy estate exists is on the petition date. Accordingly, for a claim to be allowed as an administrative expense, goods or services must be delivered or provided pursuant to a postpetition transaction; it is not enough that payment become due after the petition if the transaction was entered into with the debtor prepetition.

4 COLLIER ON BANKRUPTCY, ¶503.06[3][a] (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 15th ed. rev. 2007). As stated by the Court of Appeals, "an expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession, and 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.'" *Trustees of Amalgamated Ins. Fund v. McFarlin's*, 789 F.2d 98, 101 (2nd Cir. 1986)(citations omitted).

In the present instance, Ms. Tato has already received payment for the services rendered post-petition. In contrast, her termination claim represents a liability that derives from a pre-petition agreement and that would exist whether or not she had ever provided any post-petition service. The consideration for her termination claim derives not from the services that she rendered post-petition, but from the execution of her pre-petition contract.

Hence, this component of her proof of claim enjoys no right to a priority of distribution, but will be allowed as a general unsecured claim only.

The debtor's confirmed Plan of Reorganization serves also to ratify the non-priority character of Tato's termination claim. Article 8 of that Plan provides that all executory contracts "not assumed by prior order of the Court or in this Article 8 shall be deemed rejected." Contracts that are executory at the filing of the bankruptcy petition are treated as executory for purposes of rejection under section 365 of the Bankruptcy Code. *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687 (Bankr. S.D.N.Y. 1992). Because it contemplated continued performance by both employer and employee, the employment agreement between Tato and Sheehan Memorial Hospital qualifies as an executory contract. Pursuant to 11 U.S.C. §365(g)(1), the rejection of that contract constitutes a breach as of the moment "immediately before the date of the filing of the petition." Any claim for damages from termination must therefore be treated as a pre-petition liability to which no administrative priority can attach.

Ms. Tato's termination claim differs from the severance rights that received administrative status in *Straus-Duparquet, Inc. v. Local Union No. 3 International Brotherhood of Electrical Workers*, 386 F.2d 649 (2nd Cir. 1967). In that case, the court found that under the collective bargaining agreement at issue, severance pay served as "compensation for termination of employment." *Id.* At 651. Because the termination occurred "as an incident of the administration of the bankrupt's estate," the severance pay would be treated as an expense of administration. *Id.* In my view, the decision in *Straus-Duparquet* must be limited strictly to the circumstances of a collective bargaining agreement, for all of the reasons stated by Judge Gerber in his carefully reasoned decision in *In re Applied Theory Corp.*, 312 B.R. 225 (Bankr. S.D.N.Y. 2004). In addition, however, the present facts are clearly distinguishable from those in *Straus-Duparquet*. There, the amount of severance was based on the employee's length of service, including service

rendered post-petition.  In contrast, Ms. Tato holds a claim that derives not from the occurrence of her severance, but from violation of a specific contractual right to notice. Because that right had accrued prior to the filing of bankruptcy, this court will allow to Tato the status of a general unsecured claimant only.

Discrimination Claim

A second open issue involves a claim for damages from allegedly discriminatory employment practices.  Ms. Tato asserts that as a person of Korean origin, she belongs to a class protected from discrimination on the basis of national origin.  She further alleges that despite her qualification for employment, she was subjected to adverse action under circumstances that gave rise to an inference of prohibited discrimination.  These charges suggest factual issues that the court has yet to consider at an evidentiary hearing.  At the present moment, however, this hearing awaits decision on Ms. Tato's request that the court abstain from exercising jurisdiction on the determination of her claim.

The jurisdiction of the bankruptcy court is defined by 28 U.S.C. §157.  Generally, the statute distinguishes between core proceedings that bankruptcy judges may hear and determine, and non-core proceedings, which in the absence of consent, the judge may hear only for the purpose of submitting proposed findings of fact and conclusions of law to the district court.  Pursuant to 28 U.S.C. §157(b)(2)(B), core proceedings exclude "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11."  Further, 28 U.S.C. §157(b)(5) directs "that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."

With respect to jurisdiction, the initial question is whether the present dispute involves a "personal injury tort" that the bankruptcy court may not now address.  A leading treatise

reports that the cases have advanced three approaches: a "narrow view" that would find a personal injury only with the occurrence of trauma or bodily harm; a "broader view" which would define personal injury tort to include any invasion of personal rights; and a middle view that weighs the personal nature of the injury against characteristics involving financial, business, property or contract rights. 1 COLLIER ON BANKRUPTCY, ¶ 3.06 (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 15th ed. rev 2007). In my opinion, however. both the statutory language and reasoned authority from this circuit support the more narrow view.

By linking personal injury torts with wrongful death claims, 28 U.S.C. §157(b)(2)(B) and §157(b)(5) suggest that their jurisdictional restrictions should apply only to claims that involve physical injury, as distinct from other notions of legal injury such as those that derive from the violation of a statutory duty. For this reason, I agree with the observation of District Judge Brient in *In re Cohen*, 107 B.R. 453, 455 (S.D.N.Y. 1989), that a discrimination claim "is not a claim for a 'personal injury tort' in the traditional, plain-meaning sense of those words, such as a slip and fall, or a psychiatric impairment beyond mere shame and humiliation." Thus, as in *In re Cohen*, Ms. Tato's "tort claim for a statutory violation of a New York State anti-discrimination law does not fall within" the statutory exclusions of section 157. *Id.*

Notwithstanding the scope of this court's jurisdiction, Ms. Tato asks that I abstain from deciding her discrimination claim. Indeed, 28 U.S.C. §1334(c)(1) states that the court may abstain from hearing a particular matter, "in the interest of justice, or in the interest of comity with State courts or respect for State law." In the present instance, however, these concerns do not prevail. Rather, the best interests of the estate compel the prompt exercise of jurisdiction.

In *In re Albion Disposal, Inc.*, 217 B.R. 394, 411-412 (W.D.N.Y. 1997), the district court identified several factors which would support the retention of jurisdiction by the

bankruptcy court. At least three of these considerations apply in the present instance. First, Tato's claim involves no unsettled or unusual issues of state law. To the contrary, the discrimination claim is based on established principles that the court must now apply to the particular facts of this case. Second, the dispute involves core matters, both under 28 U.S.C. §157(b)(2)(B) as a matter requiring the allowance or disallowance of claims, and under 28 U.S.C. §157(b)(2)(A) as a matter concerning the administration of the bankruptcy estate. Third, from the perspective of the bankruptcy estate, great importance attaches to a prompt resolution of the dispute. The confirmed plan contemplates a pro-rata distribution to unsecured creditors from a fixed fund. Until the resolution of Tato's claim, the debtor cannot effect the distribution and the bankruptcy case must remain open. While the timetable for resolution in state court is uncertain at best, this court is prepared to schedule a prompt hearing to consider the merits of the discrimination claim.

In addition to the considerations approved by the court in *In re Albion Disposal, Inc.*, we must also reject abstention because the present dispute involves the essential process of the administration of this case in chapter 11. Pursuant to 28 U.S.C. §959(b), a debtor in possession "shall manage and operate the property in his possession . . . according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." These valid laws of the State would include any prohibitions against discriminatory conduct. Accordingly, this court must exercise great concern for any violation of state law by the debtor in possession during the period of case administration. To the extent that a violation of state anti-discrimination law has occurred post-petition, the bankruptcy court would most appropriately resolve any consequential claim for damages.

Conclusion

For the reasons stated herein, the claim of Young Hee Tato for termination damages will be allowed in the amount of $7,726.03, but only as a general unsecured claim to be paid in accord with the terms of the debtor's plan of reorganization.  Issues of fact preclude the court from rendering a decision at this time with regard to the claim of Ms. Tato for damages resulting from alleged acts of discrimination.  The court will, however, exercise jurisdiction over the allowance of the discrimination claim, and will deny Tato's request to abstain from deciding its merits.  Accordingly, by separate order, the court will schedule a pre-trial conference for the purpose of establishing a timetable for further proceedings with regard to the discrimination claim.

So ordered.

Dated:      Buffalo, New York                                  /s/     CARL L. BUCKI
            October 18, 2007                                            U.S.B.J.