UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
---------------------------------------------------
In re

   SHEEHAN MEMORIAL HOSPITAL,           04-11548 B

             Debtor            <u>DECISION & ORDER</u>
---------------------------------------------------

                Brinkman Portillo, PC
                Laura J. Portillo, Esq., of counsel
                4333 Park Terrace Drive, Suite 205
                Westlake Village, California 91361
                Attorneys for the Official Committee of
                      Unsecured Creditors

                Lacy, Katzen LLP
                David D. MacKnight, Esq., of counsel
                130 East Main Street
                Rochester, New York 14604
                Attorneys for the Debtor

Bucki, U.S.B.J.

     Counsel for the Official Committee of Unsecured Creditors has filed a final application for the allowance of its fees and expenses. The outcome requires the consideration of three issues: whether any portion of the allowance would violate the prohibition against fee splitting as stated in 11 U.S.C. §504(a); whether counsel may receive compensation despite a failure to secure specific permission to appear *pro hac vice*; and whether the fees and disbursements are otherwise properly allowable under the standards of 11 U.S.C. §330(a).

     Sheehan Memorial Hospital began its long history of service to the people of Western New York in 1894. Since its founding, the hospital has remained committed to its mission of providing care to many of the region's neediest residents. Perhaps for this reason, during the past decade, the hospital has encountered difficult financial problems. Sheehan defaulted on numerous

obligations, including payroll and withholding taxes.  Multiple judgments provided the basis for levies against Sheehan's bank accounts.  Then, in April of 2002, Sheehan Memorial Hospital filed the first of two petitions for relief under chapter 11 of the Bankruptcy Code.   After the debtor reported financial losses during each of the eighteen months under the protection of that initial bankruptcy proceeding, this court granted a creditor's motion to dismiss the case.  *See In re Sheehan Memorial Hospital*, 301 B.R. 777 (Bankr. W.D.N.Y. 2003).   Less than three months later, on March 8, 2004, Sheehan Memorial Hospital filed its current petition for relief under chapter 11.

Shortly after filing its second bankruptcy petition, Sheehan submitted amended schedules which revealed seemingly insurmountable impediments to reorganization.   Real property with an estimated value of $2,000,000 was encumbered by a mortgage that secured an obligation of approximately $14,000,000.  The schedules listed federal and state tax liens totaling more than $2,000,000.   In addition, the debtor acknowledged fifteen other unsatisfied judgments.  If anything, the schedules understated the magnitude of the debtor's problems.  Within three days of the bankruptcy filing, the Internal Revenue Service filed a proof of claim for more than $4,000,000.  In particular, the IRS asserted that the debtor had failed to pay withholding taxes for more than five years.  Notably, these accumulated liabilities were owed by an entity with no recent history of a positive income statement and whose long term goal was to pursue charitable objectives.

Taxes would seriously impede confirmation of any reorganization plan for Sheehan Memorial Hospital.  With respect to cases filed prior to October 17 of 2005, section 1129(a)(9) of the Bankruptcy Code required that priority tax claims be paid with interest over a period of six years from the date of tax assessment.  11 U.S.C. §1129(a)(9)(C)(2000).  On the facts of this case, the enormity of tax liability would

effectively preclude any distribution to unsecured creditors, except to the extent that taxing authorities would consent to a reduced or extended payout for themselves. Accordingly, unsecured creditors had no basis to expect anything other than perhaps a token distribution on account of their claims.

After its second bankruptcy filing, Sheehan Memorial Hospital operated in chapter 11 for more than two and one-half years prior to confirmation of its reorganization plan on November 22, 2006. To achieve this outcome, the debtor negotiated significant concessions from secured and priority creditors. With respect to unsecured creditors, the plan created a fund of $200,000, to be used first to pay any award to counsel for the Official Committee of Unsecured Creditors, with the balance to be distributed on account of claims totaling approximately $20 million. Effectively, therefore, the plan contemplated a distribution to unsecured creditors of less than one percent of outstanding indebtedness.

In October of 2004, the Official Committee of Unsecured Creditors moved for authority to employ the law firm of Brinkman Portillo, PC. This application indicated that the Office of the United States Trustee had duly appointed the Committee pursuant to 11 U.S.C. §1102, that the Committee had met telephonically, and that its members had voted to retain Brinkman Portillo as its counsel. In further support of this application, Jason L. Coles filed an affidavit in which he represented that he was "of counsel with the law firm," that he was admitted to practice law in the Bankruptcy Court for the Western District of New York, and that the firm was "disinterested within the meaning of 11 U.S.C. §327." In as much as the applica-tion appeared to satisfy the requirements of 11 U.S.C. §1103(a), the court signed an order approving the employment.

Brinkman Portillo filed an initial application to approve compensation and reimbursement of expenses on June 16, 2006. After a hearing on that application,

the court authorized payment for disbursements in the amount of $1,199.30, and approved compensation "on an interim basis" for 80 percent of the fee request. Thus, Brinkman Portillo received a total payment of $46,274.10, an amount which constituted the sum of allowed disbursements plus $45,074.80, that is, 80 percent of the requested compensation of $56,343.50.  Because we granted only interim relief, however, the allowance was subject to reconsideration.  While the court would consider the remaining 20 percent of the request with the final fee application, it reserved the right to order a disgorgement of some or all of the interim allowance after a review of all services, particularly with respect to the issue of whether the services would prove to have been beneficial to completion of the case. *See* 11 U.S.C. §330(a)(3)(C).

On December 14, 2006, Brinkman Portillo filed its final fee application, in which it sought payment of the remaining balance due on its first fee application, together with allowances for services rendered and disbursements incurred thereafter.  Specifically, the firm requested payment of additional expenses in the amount of $591.57, and of compensation in the amount of $24,521.20.  This latter sum included a request for $13,252.50, as the value of services rendered after the first fee application, as well as $11,268.70, as the hold-back on the first application. By reason of its two applications, therefore, Brinkman Portillo sought total compensation of $69,596, in addition to reimbursement of expenses.

A hearing on Brinkman Portillo's fee application was scheduled for January 8, 2007.  No one opposed the fee request, and Brinkman Portillo chose to rely upon its written submission.  Nonetheless, the court reserved decision, to allow opportunity for a fuller review of both the initial and final fee applications.

The final fee application included an unusual time entry for January 13, 2006, in which reference was made to receipt of an e-mail "from co-counsel."  The

statement caused surprise, because the court had approved only the appointment of Brinkman Portillo as attorneys for the Official Committee of Unsecured Creditors. This inconsistency then led the court to review the entire record regarding the law firm's role in this proceeding.   Upon identifying various discrepancies and other problems, the court requested further argument with regard to the fee application. Brinkman Portillo then appeared at a reopened hearing on March 12, 2007, at which time the court granted the firm permission to file supplemental papers.   Having studied that response, the court can now discuss the three issues affecting an allowance of compensation.

## Fee Splitting

In its application for appointment, Brinkman Portillo represented that it then maintained offices both in California and in Rochester, New York.   The firm also presented an exhibit showing the hourly rate for six attorneys who might work on the file.   Of these six, David L. Murphy and Jason Coles were listed "of counsel." Coincidentally, Murphy and Coles were the only attorneys who practiced from the Rochester office.   Somewhat in contradiction to these representations, however, the Brinkman Portillo firm was not listed in the telephone directory of law firms in the Rochester area.   Meanwhile, the Martindale-Hubbell Law Directory indicates that this firm maintains only one office and that that office is located in Westlake Village, California.   Also, at the time of its application for appointment, Brinkman Portillo maintained a web site that contained no reference to either Murphy or Coles.

Section 504(a) of the Bankruptcy Code states generally that a professional person "may not share or agree to share" any compensation or reimbursement that is paid from the bankruptcy estate.   An exception arises under 11 U.S.C. §504(b)(1), which provides that "[a] member, partner, or regular associate in a professional association, corporation, or partnership may share compensation or reimbursement . . . with another member, partner, or regular associate in such

association, corporation, or partnership . . . ."  With respect to the present fee application, the issue is whether Brinkman Portillo improperly seeks to share compensation attributable to the services of Mr. Murphy and Mr. Coles.

Brinkman Portillo argues that Murphy and Coles maintained an "of counsel" relationship to the firm, and that this relationship justifies a sharing of compensation.  In support of this position, the firm cites *In re Coin Phones, Inc.*, 226 B.R. 131 (S.D.N.Y. 1998).  In this decision, Judge Brient concluded that "[a] lawyer who is acting 'of counsel' for a law firm and is held out to the public will be regarded as a 'member' within 11 U.S.C. §504, so as to be free from statutory limitations on fee sharing arrangements." 226 B.R. at 132.

*In re Coin Phones* involved facts that are somewhat different from those in the present matter.  There, the attorney "of counsel" had accepted more than 25 assignments from the appointed firm.  Here, the record contains no evidence that Murphy and Coles maintained any relationship with Brinkman Portillo other than in the context of the instant case.  Nonetheless, the defining issue relates not to the history of relationships, but to whatever representations the parties may make to the public and the court.  In its application for appointment as committee counsel, Brinkman Portillo identified Murphy and Coles as having an "of counsel" relationship. Indeed, Mr. Coles signed the appointment application on behalf of the firm.

Section 504 of the Bankruptcy Code prohibits only the sharing of compensation with someone who is not a partner, regular associate or member of the appointed firm.  The statute imposes no standards for firm membership.    While the exception includes associates who maintain a "regular" relationship with a firm, the statute also allows fee sharing with any "member," whether that membership is regular or sporadic.  Pursuant to the holding in *In re Coin Phones*, lawyers with an "of counsel" relationship are to be treated as members of a firm for purposes of

11 U.S.C. §504.     Although lawyers will usually affiliate with only one firm, they have on occasion maintained multiple "of counsel" relationships at the same time. Having established a limited "of counsel" affiliation as declared to the court in the application for employment, Brinkman Portillo may now incorporate the services of Coles and Murphy into the firm's fee application, without risk of impinging upon the prohibition against fee splitting.

Admission to Practice

Of all the attorneys who claimed an affiliation with Brinkman Portillo, only Jason Coles was ever admitted to practice in the Bankruptcy Court for the Western District of New York.  On May 3, 2006, however, the firm sent to the court a letter stating that Mr. Coles had terminated his "of counsel" relationship.  Meanwhile, with respect to the period of time for which the firm seeks compensation, no one from Brinkman Portillo has applied for admission *pro hac vice*.  Thus, for a significant period of its representation, the firm filed papers and appeared without proper qualification.  The issue is whether this oversight should warrant a disallowance of compensation.

In this district, the Bankruptcy Court has liberally granted motions for the *pro hac vice* admission of attorneys from most other jurisdictions.[1]  We know of no reason why such privileges would not have been granted to any member of Brinkman Portillo.  Further, David Murphy was already admitted to practice before the District Court for this district, and under our local rules, would have easily been admitted to practice before the Bankruptcy Court.  Thus, Brinkman Portillo offers no good excuse for its failure to maintain proper qualifications.

---

[1]I have not yet had to decide, however, whether this policy would be applied to counsel from jurisdictions that refuse to extend reciprocal consideration to members of the bar from the Western District of New York.

We diligently demand proper licensing of every individual who seeks to practice before this court.  In the present instance, however, a previously qualified firm lost its status due to the apparently unexpected departure of an associate attorney.  Although the firm should have addressed this problem in timely fashion, its oversight appears innocent and without any intent to deceive the court. Fortunately, the mistake has not affected any right of the client, but threatens only to impair the interest of counsel.  Under these circumstances, we will treat the fee application as a request for *nunc pro tunc* admission *pro hac vice*.  On a one-time basis only, the court will grant this request and proceed to consider the merits of the fee application.

Reasonableness of Requested Allowance

Altogether, the two fee applications of Brinkman Portillo seek payment of fees totaling $69,596, and reimbursement of expenses in the amount of $1,790.87. After a careful review of each disbursement, the court approves the reasonableness of the firm's out of pocket expenditures.  For services rendered, however, the requested compensation is grossly excessive and unreasonable under the circumstances of this case.

Committee counsel can serve a necessary and helpful role in the reorganiza- tion process.  Often composed of creditors with no history of coordinated involve- ment in a case, committees will usually need the assistance of an attorney if they are to fulfill the mission contemplated by Congress when it authorized the creation of committees under 11 U.S.C. §1102.  For example, experienced counsel will understand the powers and duties of a committee within the bankruptcy process. *See* 11 U.S.C. §1103. In appropriate instances, an attorney's participation can facilitate the early development of a confirmable plan.  Indeed, the very philosophy of chapter 11 aims to encourage the development of a plan through collaboration between the debtor and the creditors for whom the committee serves as represen-

tative.  *See* 11 U.S.C. §1103(c)(3).  For these reasons, courts will readily approve compensation for those committee counsel who have contributed to the completion of a bankruptcy case.  However, this policy will never reward the mere churning of a file.

Upon undertaking representation of the creditors' committee in this case, any reasonable counsel would have examined its essential facts.  Even the most cursory review would have revealed the enormity of Sheehan's financial distress and the impossibility of any material distribution to unsecured creditors.  For example, counsel should have read this court's published opinion which sets forth the financial extremis that compelled a dismissal of the debtor's first bankruptcy proceeding.  Indeed, in that earlier case, Sheehan avoided liquidation only because 11 U.S.C. §1112(c) prohibits the involuntary conversion of a case where the debtor is an eleemosynary institution.  Counsel would surely have read the schedules and financial reports filed in the present proceeding, all of which showed a debtor with severe financial problems.  Clearly, the debtor lacked any ability to make timely and full payment of its overwhelming priority claims.  Hence, pursuant to 11 U.S.C. §1129(a)(9)(C), plan confirmation would ultimately depend upon consent of the taxing authorities, without regard to any position that unsecured creditors might wish to assert.  With no Delphic ambiguity, the record would have given to counsel a clear oracular insight into the outcome of any reorganization.  As fully indicated, the confirmed plan would inevitably allow a token distribution of less than one cent on each dollar of unsecured claim.

In the present instance, where the debtor lacked resources for any meaningful distribution to unsecured creditors, prudent counsel would have recognized the futility of intensive representation and should have recommended to the committee that the firm down-size the scope of its involvement.  *In re Auto Parts Club, Inc.*, 29 B.R. 29, 34 (B.A.P. 9th Cir. 1997).  Instead, the committee's lawyers undertook an

excessively broader project that has generated legal bills in excess of $70,000. Under terms of the confirmed plan, these legal fees and disbursements will dissipate the paltry fund available for unsecured creditors.

Overwhelmingly, Brinkman Portillo devoted its time to what one might generously describe as monitoring activity.  Altogether, the firm has presented entries for 205.2 hours of legal services.  Based on the description of services rendered, the court has calculated that at least 102.5 hours are attributed to the review of documents, reports and correspondence.  Additionally, 35.9 hours were assigned to a project category dealing with the firm's appointment and its applications for compensation.  Although counsel in appropriate circumstances may receive payment for the types of services represented by these 138.4 hours, here they account for more than 67 percent of the firm's total activity.  Thus, at least two-thirds of all time involved no direct input into the proceedings of this case. Meanwhile, numerous other entries appeared to involve the gathering of information for purposes having no clear relevance to the committee's ultimate contribution to the confirmation and case administration processes.

Except with respect to its applications for appointment and for the allowance of compensation, Brinkman Portillo filed but a single pleading in this case and made only one appearance in court.  Both the pleading and appearance involved an important motion for stay relief, and for that involvement the attorneys should receive full compensation.  But that entire project category represented less than 15 percent of the time that the firm devoted to the total case.  Meanwhile, the committee presented no position with respect to other important issues such as confirmation of the debtor's Reorganization Plan.  Many of the firm's time entries show work without obvious consequence for the advancement of Sheehan's reorganization.  For example, although Brinkman Portillo reviewed the various claim

objections filed by debtor's counsel, time records show no participation in the preparation of those objections or in the claim objection process.

Within the limits of reasonableness, counsel for a creditor's committee may need to monitor the ongoing activity of a bankruptcy case. Where the facts suggest limited rewards from any such review, however, the monitoring function is appropriately assigned to more junior attorneys. In the present instance, approximately 55 percent of all services were performed by the two most senior partners of the firm. Although the firm may properly receive some compensation for the services that it has rendered, the court will allow only the hourly rate appropriate to the level of experience that the circumstances would have generally warranted. *See In re Music Merchants, Inc.*, 208 B.R. 944 (B.A.P. 9th Cir. 1997).

Section 330(a)(1)(A) of the Bankruptcy Code states that the court may award "reasonable compensation for actual, necessary services rendered" by an attorney employed by the committee of unsecured creditors in chapter 11. Pursuant to 11 U.S.C. §330(a)(2), however, "[t]he court may, on its own motion . . . award compensation that is less than the amount of compensation that is requested." With respect both to the grant and the denial of fees, 11 U.S.C. §330(a)(3) establishes the controlling standard, as follows:

> In determining the amount of reasonable compensation to be awarded to . . . a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including — (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code]; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary

compensation charged by comparably skilled practitioners
in cases other than cases under [the Bankruptcy Code].

In the present instance, the court's primary concerns focus on the third and fourth enumerated factors, namely whether the services were necessary or beneficial to the administration of the estate and whether counsel performed them within a reasonable amount of time commensurate with the nature of the problem.

While Brinkman Portillo provided services needed to enable the Committee to function within the bankruptcy process, those services produced almost no other meaningful benefit to the administration of this case. Indeed, if the court were to allow the firm's request for compensation, unsecured creditors would receive only a fraction of what they would have received without any counsel involvement. Some such compensation may be a necessary cost of administration, but here, Brinkman Portillo expended an amount of time not commensurate with the nature of the problems presented. Upon confirming the scope of the debtor's financial problems, counsel should appropriately have limited its activity to tasks that would augment rather than merely review the work of debtor's counsel.

We will not reward counsel who approach representation in bankruptcy as a "make work" opportunity. Unfortunately, the court is unable to identify more than one meaningful contribution by the committee's counsel to the outcome of this case. Brinkman Portillo should receive an allowance for its one appearance in opposition to a key motion for stay relief. Otherwise, compensation will be limited to time that the firm actually devoted to necessary services. Here, these services would reasonably include an assessment of the facts, a communication of any findings to the committee of creditors, a limited but meaningful monitoring of activity, and the preparation of applications for compensation. Further, the rate of compensation should be set as the charge properly payable for the level of skill and experience needed generally to perform the required tasks. After accounting for

any excesses, I believe that the firm would be generously compensated by an allowance that falls within a range of 60 to 65 percent of the requested fee.

Conclusion

Pursuant to the prior order granting an interim allowance, Brinkman Portillo has received payments in the amount of $46,274.10. This court has previously approved the reimbursement of expenses in the amount of $1,199.30, and will approve the payment of additional disbursements in the amount of $591.57. After crediting these expenses against payments received, Brinkman Portillo still retains $44,483.23, for application against any final fee allowance. This later sum constitutes approximately 64 percent of the firm's request for compensation in the amount of $69,596. Because the funds on account fall within the range of an acceptable but generous level of compensation, the court will not require any disgorgement of funds. On a final basis, for all of the reasons stated herein, the court will approve compensation of $44,483.23, this being the amount already received. Any further request for compensation is denied.

So ordered.

Dated:      Buffalo, New York                    _____/s/____CARL L. BUCKI_____
            December 21, 2007                              U.S.B.J.